CINCINNATI INSURANCE COMPANY, Appellant,

v.

HOPKINS SPORTING GOODS, INC., Appellee.

No. 93–995.

Supreme Court of Iowa.

Oct. 19, 1994.

L.W. Rosebrook and Steven L. Serck of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellant.

John A. McClintock and John E. Swanson of Hansen, McClintock & Riley, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

This is a dispute over the amount of insurance coverage provided in an insurance policy's dishonest employee endorsement. One issue is whether the policy covered a loss incurred during the period of a prior policy, but discovered during a later one. Another issue is whether the policy provided separate $15,000 protections for each of the three years of the policy, or was limited to a total of $15,000 for the entire three-year period. A third issue concerns the special expenses incurred in pursuing the claim. On the insurer's appeal we affirm the trial court holdings that the policy covered the earlier period and that separate $15,000 protections were provided. We however reverse the holding that compensated for part of the insured's expenses in pursuing the claim.

Defendant-appellee, Hopkins Sporting Goods, Inc. (Hopkins), maintained comprehensive insurance coverage with plaintiff-appellant, Cincinnati Insurance Company (Cincinnati), including a provision insuring Hopkins from losses due to "employee dishonesty."

Cincinnati issued two policies to Hopkins, one for 1986 through 1989, and another for 1989 through 1992. Each policy, in section 1 of the endorsement required a loss to be discovered no later than a year from the end of the policy:

[l]oss is covered under this endorsement only if discovered not later than one year from the end of the effective period of this endorsement.

Hopkins thinks this limitation was qualified by provision C of the general agreements which stated:

LOSS UNDER PRIOR BOND OR POLICY

If the coverage of this endorsement is substituted for any prior bond or policy of insurance carried by the Insured ..., which prior bond or policy is terminated, canceled or allowed to expire as of the time of such substitution, the Company agrees that this endorsement applies to loss which is discovered as provided in Section 1 of the conditions and limitations and which would have been recoverable by the Insured ... under such prior bond or policy except for the fact that the time within which to discover loss thereunder had expired; provided:

(1) the insurance under this General Agreement C shall be a part of and not in addition to the amount of insurance afforded by this endorsement....

The employee dishonesty coverage was for $15,000.

The policy also contained a "non-accumulation clause":

TOTAL LIMIT OF LIABILITY

Regardless of the number of years this endorsement shall continue in force and the number of premiums which shall be payable or paid, the Company's total limit of liability shall not be cumulative from year to year or period to period.

Finally the policy contained an exclusion for expenses incurred by insureds in establishing losses:

EXCLUSIONS

This endorsement does not apply:

(b) to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation;

. . . .

(j) to and the Company shall not be liable under any Insuring Agreement for:. . .

(iii) All costs, fees and other expenses incurred by the Insured in establishing

the existence of or amount of loss covered under this Policy.

Upon discovery of loss insureds were required to

file detailed proof of loss, duly sworn to, with the Company within four months after the discovery of the loss.

In 1992 Hopkins discovered it had suffered employee theft during the years 1987 through 1991. An inventory check indicated the losses exceeded $157,000. Cincinnati however rejected the proof, citing another provision of the policy which excluded proof by inventory. Hopkins then hired a private investigator who documented losses in excess of $44,000. Hopkins paid the investigator $5538.95 for these services.

In pressing its claim, Hopkins contended it was entitled to coverage of up to $15,000 per year from 1987 through 1991. Cincinnati's position was that no coverage existed prior to 1989, and that the $15,000 represented its total liability limit. The parties also disagreed on Hopkins' claim for the investigator's expenses. Cincinnati took the position that this expense was specifically barred by section (j)(iii) of the exclusions.

By agreement Cincinnati has already paid the $15,000 it believes the total due on the policy. The parties agreed that Cincinnati would bring this declaratory judgment action to determine the remaining claims.

I. A declaratory judgment is reviewed as any other judgment. Iowa R.Civ.P. 267. Trial of this case in district court was at law, so review is on error. Iowa R.App.P. 4; *Mead v. Iowa State Bd. of Parole*, 331 N.W.2d 102, 103 (Iowa 1983).

■ The trial court correctly observed that the first two issues are controlled by the fundamental rule for interpreting insurance policies which, because they are contracts of adhesion, must be construed in the light most favorable to the insured. *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991). Furthermore, if words of an insurance policy are susceptible to two interpretations, the interpretation favoring the insured must be adopted. *Id.*

■ II. Cincinnati first argues there should be no allowance for any losses occurring prior to February 1, 1989, the commencement date of the second policy. Section 1 of the endorsement, previously quoted, clearly supports Cincinnati's view. We agree, though, that the meaning of the language is clouded by provision C of the general agreements, also previously quoted. That provision, a clear incentive for insureds to continue to purchase coverage with Cincinnati, can be understood to extend the limitations period into the period of a new policy. This was the holding in *White Dairy Co. v. St. Paul Fire & Marine Insurance Co.*, 222 F.Supp. 1014, 1017–18 (N.D.Ala.1963).

We do not suggest that the *White Dairy* holding is a more sound interpretation of the policy than the understanding suggested by Cincinnati. But the *White Dairy* holding is a plausible interpretation and, under the fundamental rule of interpretation favoring coverage, mandates coverage here. The trial court was correct in so holding.

■ III. The same rule controls the second issue. Although Cincinnati claims otherwise, we think there is an ambiguity by reason of the policy's non-accumulation clause. That clause, especially the word "cumulatively," can be interpreted as supporting the position either of Cincinnati or Hopkins. Case authority supports both interpretations. Indeed courts have found similar or identical clauses: (1) unambiguous in supporting the position of Cincinnati, *e.g.*, *Davenport Peters Co. v. Royal Globe Ins. Co.*, 490 F.Supp. 286, 290–91 (D.Mass.1980) (identical clause found unambiguous); *Santa Fe Gen. Office Credit Union v. Gilberts*, 12 Ill.App.3d 693, 299 N.E.2d 65, 76 (1973) (identical clause found unambiguous); (2) unambiguous in supporting the position of Hopkins, *e.g.*, *Globe Indem. Co. v. Wolcott & Lincoln, Inc.*, 152 F.2d 545, 546–49 (8th Cir.1945); *White Dairy*, 222 F.Supp. at 1018; *City of Miami Springs v. Travelers Indem. Co.*, 365 So.2d 1030, 1031 (Fla.App.1978) (identical clause found unambiguous); and, finally, (3) ambiguous, *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn.1979) (identical clause found ambiguous); *Prairie Land Coop. v. Millers' Mut. Ins. Ass'n of Ill.*, No.

C2–91–1503, 1992 WL 20705, at *1 (Minn. App. Feb. 11, 1992) (identical clause found ambiguous).

The view favoring Hopkins' understanding, though perhaps not more persuasive, is, again, plausible. Indeed Cincinnati's own agent who sold Hopkins the policy understood it to provide three successive one-year coverages of $15,000.

■ We do not hold that an ambiguity necessarily appears merely because case authority can be found to support divergent interpretation of a policy's wording. Neither should we be understood as holding that an insurance agent is authorized to make a binding admission concerning the meaning of a policy's wording. Like the trial court, however, we believe that an ambiguity exists under the circumstances here.

The trial court was correct in applying the canon construing insurance policies against the insurer and in holding that the "[d]efendant is not limited to a total $15,000 recovery but is limited to that amount in any one year of these type losses concerning the same employee." The trial court's judgment thus did not compensate for more than $15,000 for any one year.

■ IV. The trial court was not however correct in assessing one-half of Hopkins' expense in proving the claim. This is because the policy contained the previously quoted provision requiring the insured to provide a detailed claim and excluding costs incurred in presenting it.

The district court allowed Hopkins recovery of half the investigatory expenses (approximately $2500), based on the following rationales: (1) expenses inured, at least in part, to the benefit of Cincinnati (in connection with its subrogation rights against the thief-employee—in essence, quantum meruit); (2) expenses of about $5000 for investigation involving traveling about the state were not "out of line or blatantly excessive"; and (3) putting together the proof of loss does not ordinarily require the sort of expenditures required of Hopkins.

The relief accorded was thus equitable in nature. We find no authority supporting it,

there being no ambiguity in the policy on this point.

■ Hopkins seeks affirmance of the point on a ground rejected by the trial court: the doctrine of reasonable expectations, but we find no basis for applying the doctrine here. There is nothing in the policy subject to misunderstanding by an ordinary layperson, and there are no circumstances attributable to Cincinnati which would foster coverage expectations. See Clark–Peterson Co. v. Independent Ins. Co., 492 N.W.2d 675, 677 (Iowa 1992).

The trial court judgment must be modified so as to delete that part which allowed one-half recovery for investigatory expenses. In all other respects the trial court judgment should be affirmed. Tax costs three-fourths to Cincinnati, one-fourth to Hopkins.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**