## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00298-SCT

*UNIVERSAL UNDERWRITERS INSURANCE COMPANY, A MISSISSIPPI CORPORATION*

*v.*

*BUDDY JONES FORD, LINCOLN-MERCURY, INC., A MISSISSIPPI CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/97 |
| TRIAL JUDGE: | HON. JON M. BARNWELL |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH W. McDOWELL |
| | JEFFREY A. STYRES |
| ATTORNEYS FOR APPELLEE: | LUKE J. SCHISSEL |
| | WILLIAM LARRY LATHAM |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART; REMANDED - 3/11/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.

### BANKS, JUSTICE, FOR THE COURT:

¶1. Here we deal with a matter of insurance policy construction. We conclude that the successive policies provide coverage under our traditional doctrine of construing such policies in favor of the insured. We affirm the trial court in its judgment finding liability. We reverse the trial court in its decision limiting that liability to a single year.

### I.

¶2. This matter arises out of certain alleged occasions of embezzlement committed by Patsy Ellis, a former bookkeeper and office manager of Buddy Jones Ford Lincoln-Mercury, Inc. (Jones Ford). Ellis misappropriated the monies from Jones Ford on 175 separate occasions from 1984 through 1988, resulting in a total loss to Jones Ford of $233,082.97. The embezzlement was discovered by Jones Ford on or about July 25, 1988, during an unannounced independent audit.

¶3. Jones Ford was insured by Universal Underwriters Insurance Company (Universal). Universal had issued a Unicover garage liability policy of insurance number 015527 for the policy period October 1, 1984, to October 1, 1985, with Jones Ford as the named insured. Four additional policies were issued by Universal to Jones Ford during the following periods: Unicover policy number 015527A for the policy period October 1, 1985, to October 1, 1986; Unicover policy number 015527B for the policy period October 1, 1986, to October 1, 1987; Unicover policy number 015527C for the policy period October 1, 1987, to October 1, 1988; and Unicover policy number 015527D for the policy period October 1, 1988, to October 1, 1989.

¶4. All of the Unicover policies issued to Jones Ford provided fidelity bond coverage for "Employee Dishonesty" under the section entitled "UNICOVER COVERAGE PART 380 -- CRIME," and contained identical language relating to the conditions, provisions, deductibles, limits of liability, exclusions and amounts of coverage for employee dishonesty. The stated limit of liability for employee dishonesty is $10,000 with a $250 deductible, as set forth on page 1-F of the declaration pages contained in the policies.

¶5. The pertinent provisions relating to the type of loss covered and the maximum amount of liability or limits for loss were set forth in the policies as follows:

INSURING AGREEMENT -- WE will pay for LOSS as defined as follows:

EMPLOYEE DISHONESTY -- WE will pay for LOSS of MONEY, SECURITIES, and other property which YOU sustain resulting directly from any fraudulent or dishonest act committed by an EMPLOYEE with manifest intent to:

(a) cause YOU to sustain such a LOSS, and;

(b) obtain financial benefit for the EMPLOYEE, or any other person or organization intended by the EMPLOYEE to receive such benefit other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, and other EMPLOYEE benefits earned in the normal course of employment.

* * *

9. THE MOST WE WILL PAY -- LOSS payment will not reduce OUR liability for other LOSSES. From the amount of LOSS, WE will deduct the net amount of all recoveries obtained or made by YOU (other than LOSS covered by any other bond or insurance) or US. If the net LOSS is in excess of the deductible stated in the declarations, and regardless of the number of persons or organizations included in YOU, the most WE will pay:

(a) under EMPLOYEE DISHONESTY, is the limit stated in the declarations as applicable to a LOSS caused by one or more EMPLOYEES, or to all LOSS caused by one EMPLOYEE or in which the EMPLOYEE is concerned or implicated;

* * *

Regardless of the number of years this Coverage Part continues in force, the limit stated in the declarations is not cumulative from one period to another, or from one year to another.

¶6. There is also a discovery requirement and conditions for coverage for employee dishonesty in the policies which reads as follows:

> 1. DISCOVERY -- LOSS is covered only if discovered not later than one year from the end of the Coverage Part period.

¶7. After the embezzlement was discovered, Jones Ford's account executive, Dan Tanner, contacted Universal and advised it that Jones Ford anticipated making a claim under the Unicover policy, coverage Part 380. Jones Ford was advised by Universal through correspondence that a sworn Proof of Loss statement should be submitted within four months of the discovery of the loss. Universal received a Proof of Loss statement from Jones Ford on or about November 14, 1988, and an Amended Proof of Loss on November 29, 1988, which itemized the 175 separate occasions of embezzlement by Ellis. On or about December 2, 1988, Universal issued and mailed to Jones Ford a draft in the amount of $10,000, contending that this amount represented Universal's limit of liability under the provisions of the policies. Universal took the position that the $10,000 limit of liability and the $250 deductible stated in the policies for "Employee Dishonesty" coverage apply to all loss caused by the employee Ellis, rather than to each separate occasion of embezzlement. Jones Ford received Universal's draft but did not negotiate nor deposit it. The draft was tendered to the chancery court at the time of the filing of this action.

¶8. On August 17, 1990, Jones Ford filed a complaint for declaratory judgment and other equitable relief against Universal in the Chancery Court of Leflore County. The complaint sought a determination of the amount owed under the "Employee Dishonesty" coverage provided by the Unicover policies. Patsy Ellis was also named a defendant but she subsequently filed bankruptcy and is not a party to this appeal. Also not pertinent to this appeal is the fact that this action was removed to federal court and subsequently remanded back to state court.

¶9. On September 19, 1990, Universal filed its answer admitting that it owed the policy limits of $10,000 under the "Employee Dishonesty" coverage, but that this amount had been delivered to Jones Ford upon receipt of its Proof of Loss. Universal denied that it owed more than the stated limits of liability in the policy and included in its answer a counterclaim for declaratory judgment to determine the rights of the parties under the Unicover garage liability policies issued to Jones Ford.

¶10. On October 16, 1991, Universal filed a Motion for Summary Judgment on the coverage issues to determine the amount owed under the insurance policies. In support of the motion, Universal submitted the affidavit of its claims manager, Thomas D. Dean and the affidavit of an insurance expert, Robert A. Hershbarger. On April 13, 1994, the chancery court entered an interlocutory partial summary judgment. Noting that it would "follow the directive that said policies shall be strictly construed against Universal and liberally construed in favor of the dealership," the chancery court determined that "the $10,000 limits of liability and $250 deductible under the applicable Unicover policies shall apply to each separate occurrence of embezzlement and shall not apply to the entire loss caused by the employee Ellis." The court also determined that the discovery provisions of the policies limited Universal's liability to "any loss discovered not later than one year from the end of the coverage part period." It retained jurisdiction for a final determination of the amount owed pursuant to its interlocutory ruling.

¶11. In order to assist the chancery court in a final determination in this cause, Universal and Jones Ford entered into a "Stipulation of Facts" establishing the essential facts, applicable policy language and the dates

and amounts of each occasion of embezzlement by Ellis. On January 31, 1997, the court issued its Final Judgment determining the coverage issues and awarding Jones Ford the amount of $136,510.71, plus interest, under the applicable policies issued by Universal. Universal appeals, and Jones Ford cross-appeals from that judgment.

## II.

¶12. Where a contract is clear and unambiguous, its meaning and effect are matters of law which may be determined by the court. *Overstreet v. Allstate Ins. Co.,* 474 So. 2d 572, 575 (Miss. 1985); *Dennis v. Searle,* 457 So. 2d 941, 945 (Miss. 1984); *Pfisterer v. Noble,* 320 So. 2d 383, 384 (Miss. 1975). In the present case, however, the chancellor ruled in his partial summary judgment that the contract provisions relating to "Employee Dishonesty" were ambiguous and therefore should be strictly construed against Universal as the drafter of the policy. The first question for this Court, then, is whether the chancellor erred in finding that the provisions were ambiguous.

¶13. Patsy Ellis embezzled a total amount of $233,082.97 from Jones Ford. Universal argues that the policy language is unambiguous, and clearly states that the $10,000 limit of liability and the $250 deductible in the declarations for "Employee Dishonesty" apply to "all LOSS caused by one EMPLOYEE or in which the EMPLOYEE is concerned or implicated." Thus, Universal argues that the limit of liability and deductible apply to the total amount of loss caused by Ellis, rather than to each of the 175 separate occasions of embezzlement in which she engaged.

¶14. Jones Ford agrees that the limitation provision applies to all "loss" caused by one employee. Jones Ford argues, however, that "loss" is defined to mean "loss or damage as defined in the Insuring Agreement." The Insuring Agreement, in turn, defines "loss," for the purpose of employee dishonesty, to mean "LOSS of MONEY. . . which YOU sustain resulting directly from any fraudulent or dishonest act committed by an EMPLOYEE with manifest intent to: (a) cause YOU to sustain such a LOSS, and; (b) obtain financial benefit for the EMPLOYEE." Jones Ford maintains, therefore, that the limitations clause plainly and unambiguously applies to all loss resulting directly from each fraudulent or dishonest act committed by an employee. It argues that "[i]f Universal had wished to have the Limitation clause apply to the entire loss caused by all the acts of embezzlement by an employee, Universal simply could have defined 'loss' in the Insuring Agreement as loss of money resulting directly from any fraudulent act, or series of related fraudulent or dishonest acts, committed by an employee."

¶15. The language of an insurance policy will be deemed ambiguous if it is reasonably subject to more than one interpretation. *Gunn v. Principal Cas. Ins. Co.,* 605 So. 2d 741, 746 (Miss. 1992); *American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire & Cas. Co.,* 551 N.W.2d 224, 227 (Minn. 1996); *EOTT Energy Corp. v. Storebrand Int'l Ins. Co.,* 52 Cal.Rptr.2d 894, 899 (Cal. Ct. App. 1996). Based on our reading of these policies, we conclude that the parties each give plausible interpretations of the language of the policy. It follows that the policy was correctly deemed ambiguous by the chancery court.

¶16. Where there is doubt as to the meaning of an insurance contract, it is universally construed most strongly against the insurer, and in favor of the insured and a finding of coverage. *See Nationwide Mutual Ins. Co. v. Garriga,* 636 So. 2d 658, 662 (Miss. 1994); *American Hardware Mut. Ins. Co. v. Union Gas Co.,* 238 Miss. 289, 294-95, 118 So. 2d 334, 336 (1960); *Griffin v. Maryland Cas. Co.,* 213 Miss. 624, 632, 57 So. 2d 486, 489 (1952). The basic reason that uncertainty is decided in favor of the

insured is that the insurer prepares the policy and should not be allowed by the use of obscure or ambiguous exceptions to defeat the purposes for which the policy was sold. *Evana Plantation, Inc. v. Yorkshire Ins. Co.,* 214 Miss. 321, 330, 58 So. 2d 797, 800 (1952); *Great American Ins. Co. v. Bass,* 208 Miss. 436, 44 So. 2d 532, 533 (1950). Thus, "[i]In accord with the general standard of giving effect to the purpose of the contract, the rule is that provisos, exceptions, or exemptions, and words of limitation in the nature of an exception, are strictly construed against the insurer, where they are of uncertain import or reasonably susceptible of a double construction." *Home Ins. Co. v. Thunderbird, Inc.,* 338 So. 2d 391, 394 (Miss. 1976) (*quoting* 1 *Couch on Insurance* 2d § 15:92 (1959)). *See also* *Home Owners Ins. Co. v. Keith's Breeder Farms, Inc.,* 227 So. 2d 293, 295 (Miss. 1969) ("any ambiguity in the language of the policy will be construed more strictly against the writer of the policy.").

¶17. In the present case, the chancellor determined that the language regarding the limits of liability under the employee dishonesty coverage was ambiguous, and thus construed the language in the contract in favor of Jones Ford. Accordingly, the chancellor found that the $10,000 limit of liability and $250 deductible under the policies were applicable to each separate occurrence of embezzlement by Patsy Ellis.

¶18. Universal cites numerous cases in which courts have ruled that multiple and separate dishonest acts or occasions of embezzlement constitute a single loss to the insured, or that multiple occasions of embezzlement or theft were part of such a common scheme by an employee that it would constitute one loss or occurrence. Jones Ford correctly points out, however, that the cases in which courts have considered the question of whether stated policy limits and deductibles for employee dishonesty coverage apply to a series of acts caused by an employee, are those cases in which the policy language clearly and unambiguously states that multiple acts may constitute one occurrence of loss.

¶19. For example, in *American Commerce Ins. Brokers, Inc v. Minnesota Mut. Fire & Cas. Co.,* 551 N.W.2d 224 (Minn. 1996), the employee dishonesty coverage at issue covered direct loss of money resulting from dishonest acts committed by employees and further limited coverage to the policy limit shown in the declarations for loss in any one *occurrence.* The policy then stated specifically that all loss or damage involving a single act or series of related acts was considered one occurrence. *Id.* at 225. After concluding that the term "series of related acts" was not ambiguous, the court considered the factual question of how many occurrences had taken place due to the various acts of a particular employee. *Id.* at 228-29.

¶20. Similarly, in *Business Interiors, Inc. v. Aetna Cas. & Sur. Co.,* 751 F.2d 361 (10th Cir. 1984), the policy contained a provision which provided that "[a]s respects any one employee, dishonest or fraudulent acts of such employee during the policy period shall be deemed to be one occurrence for the purpose of applying the deductible." *Id.* at 362 n.1. Although the dishonest employee had forged forty checks, the district court found that the insured had suffered only one loss and that recovery for the loss was limited to the deductible amount of $10,000. *Id.* at 363. On appeal, the court of appeals applied the general rule that "an occurrence is determined by the cause or causes of the resulting injury." *Id.* (*quoting Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56, 61 (3d Cir. 1982). Thus, it upheld the district court's finding that "the probable intent of the employee with regard to the last thirty-nine checks [was] essentially the intent to continue the dishonesty, not to commit an entirely new and different act of dishonesty." *Id.*

¶21. Under the law, therefore, a factual issue of whether multiple acts are sufficiently related to constitute one occurrence of loss only arises where the applicable policy language unambiguously states that multiple

acts may be so treated. *See also* **PECO Energy Co. v. Boden,** 64 F.3d 852, 857 (3d Cir. 1995) (in regard to policy which called for one deductible per "occurrence," trial court did not err in finding that the entire scheme of thefts constituted a single occurrence); *EOTT Energy,* 52 Cal.Rptr.2d at 900 (after ruling that objectively reasonable expectation of policy language would embrace the conclusion that multiple claims, all due to the same cause or a related cause, would be considered a single loss to which a single deductible would apply, court reversed summary judgment for consideration of whether a systematic and organized scheme to steal diesel products existed); *Jefferson Barish Clerk of Court Health Ins. Trust Fund v. Fidelity & Deposit Co. of Maryland,* 673 So. 2d 1238, 1245 (La. Ct. App. 1996) (where "[o] ccurrence" means all loss caused by, or involving, one or more employees, whether the result of a single act or a series of acts, court held that only one occurrence of employee dishonesty could be found).

¶22. In the present case, the limitations clause plainly and unambiguously applies to each fraudulent or dishonest act committed by an employee, and the $10,000 policy limit and $250 deductible thus apply to each occasion of embezzlement by Ellis.[(1)]

### III.

¶23. On cross-appeal, Jones Ford argues that the chancellor erred in computing its amount of recovery from Universal under the policies. The chancellor ruled that "Universal shall only be liable for any loss discovered not later than one year from the end of the coverage part period, which would be for all acts of embezzlement during the policy period from October 1, 1987, and from the policy period beginning October 1, 1987, to the alleged date of discovery of the loss on July 25, 1988."

¶24. The Unicover policy contains a discovery clause which reads in relevant part:

> 1. DISCOVERY -- LOSS is covered only if discovered not later than one year from the end of the Coverage Part period. Subject to Condition 3:

Based on this clause, the chancellor ruled that "Universal shall only be liable for any loss discovered not later than one year from the end of the coverage part period, which would be for all acts of embezzlement during the policy period from October 1, 1987, and from the policy period beginning October 1, 1987, to the alleged date of discovery of the loss on July 25, 1988."

¶25. However, Jones Ford asserts that the policy also contains an Extension of Coverage provision, to which the discovery clause is subject. This provision states:

> 3. LOSS UNDER PRIOR BOND OR POLICY -- If EMPLOYEE DISHONESTY replaces a bond or policy carried by YOU (or YOUR predecessor in interest) that is no longer in effect, WE will pay for LOSS (subject to Condition 1) if LOSS would have been covered by the prior bond or policy except that the LOSS was not discovered in the Discovery Period of the prior bond or policy. Provided, however:

> (a) this extension is part of and not in addition to the limit stated in the declarations for EMPLOYEE DISHONESTY;

> (b) the LOSS would have been covered had this insurance been if effect when the act or event causing the LOSS took place:

(c) LOSS recovery is limited to the least of the following:

(1) the amount recoverable at the time coverage was replaced by this insurance had it been in force at the time the act or event took place;

(2) the amount recoverable if the prior bond or policy had continued in force until the discovery of the LOSS.

¶26. In *Cincinnati Ins. Co. v. Hopkins Sporting Goods, Inc.,* 522 N.W. 2d 837 (Iowa 1994), the court construed a similar provision. The court agreed that the language of the discovery clause there supported the insurer's position that coverage was limited to loss discovered not later than one year from the end of the policy period. The court held, however, that ambiguity was created as to the effect of the discovery clause in light of the extension clause and that such ambiguity must be construed in favor of the insured. The court stated:

> Cincinnati first argues there should be no allowance for any losses occurring prior to February 1, 1989, the commencement date of the second policy. Section 1 of the endorsement, previously quoted, clearly supports Cincinnati's view. We agree, though, that the meaning of the language is clouded by provision C of the general agreements, also previously quoted. That provision, a clear incentive for insureds to continue to purchase coverage with Cincinnati, can be understood to extend the limitations period into the period of a new policy. This was the holding in *White Dairy Co. v. St. Paul Fire & Marine Insurance Co.,* 222 F.Supp. 1014, 1017-18 (N.D.Ala.1963).

> We do not suggest that the *White Dairy* holding is a more sound interpretation of the policy than the understanding suggested by Cincinnati. But the *White Dairy* holding is a plausible interpretation and, under the fundamental rule of interpretation favoring coverage, mandates coverage here. The trial court was correct in so holding.

*Cincinnati Sporting Goods,* 522 N.W.2d at 839.

¶27. Jones Ford correctly maintains that a similar ambiguity exists in the present case. Such ambiguity must be construed in favor of the insured. Thus, we conclude the chancellor erred in limiting Universal's liability to loss discovered not later than one year from the end of the Coverage Part period. The Extension of Coverage provision, construed in favor of Jones Ford, continuously extends the discovery clause through each successive policy period, since Jones Ford continued to purchase coverage with Universal throughout the entire period the acts of embezzlement occurred.

## IV.

¶28. For the foregoing reasons the judgment of the chancery court is affirmed on direct appeal, and reversed on cross-appeal, and this case is remanded for a recomputation of the amount owed by Universal to Jones Ford.

¶29. **AFFIRMED ON DIRECT APPEAL; REVERSED ON CROSS-APPEAL; REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. Universal essentially argues that even if the language of the limitations clause is deemed to be ambiguous, a factual question still arises as to whether a series of related acts may be treated as one loss. The issue, however, is not whether the policy language *can* be read in favor of Universal on this point, but whether it *must* be read that way. In the present policy there is no language which specifically rebuts Jones Ford's contention that the limitations clause unambiguously applies to each separate occasion of embezzlement. That is, there is no language stating that multiple acts or a series of related acts may be treated as one occurrence of loss. If Jones Ford's construction of the policy language is possible, then it controls.