# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01876-SCT

*TINA CRUM, PATRICK CRUM, TANYA LANGFORD AND THOMAS LANGFORD*

*v.*

*STEVE JOHNSON AND MISSISSIPPI FARM BUREAU MUTUAL INSURANCE CO.*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/8/2000 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JEFFERSON DAVIS GILDER |
| ATTORNEYS FOR APPELLEES: | W. SHAN THOMPSON |
| | J. TUCKER MITCHELL |
| | JOHN BRIAN HYNEMAN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 3/07/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/28/2002 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Mississippi Farm Bureau Mutual Insurance Company (Farm Bureau) filed a declaratory judgment action in the Circuit Court of Calhoun County requesting that the court declare that the claims made against Steve Johnson (Johnson) by Tina Crum (Tina), Patrick Crum (Patrick), Tanya Langford (Tanya), and Thomas Langford (Thomas) constitute one occurrence under the terms of Johnson's Farm Bureau homeowners insurance policy, thereby limiting their recovery to $50,000 for all claims. After hearing the merits of the case, the circuit court granted Farm Bureau's motion for summary judgment finding that the suit filed against Johnson by the Crums and Langfords constituted only a single occurrence and that the maximum available coverage would be $50,000 if Johnson were found liable. The underlying suit to determine whether Johnson is liable is ongoing. The Crums and Langfords cite the following issues on appeal:

**I. WHETHER THE POLICY IS AMBIGUOUS.**

**II. WHETHER TINA'S AND TANYA'S HUSBANDS' CLAIMS OF LOSS OF CONSORTIUM CONSTITUTE A SEPARATE OCCURRENCE.**

**III. WHETHER THE INSURANCE POLICY SHOULD BE INTERPRETED TO ALLOW THE ATTACK BY TWO DOGS ON TWO WOMEN TO CONSTITUTE MORE THAN ONE OCCURRENCE?**

Finding error, we reverse the summary judgment and remand.

## FACTS

¶2. On March 17, 1996, Tina Crum was attacked by two Rottweiler dogs while walking on a walking track in Vardaman, Mississippi. Tanya Langford, Tina's walking companion, was also attacked by one of the dogs. Tina, Tanya, and their husbands filed suit against the owner of the dogs, Steve Johnson, and the town of Vardaman alleging that Johnson was negligent in allowing the two dogs to run loose knowing they were dangerous. There is no evidence to indicate how or why Johnson failed to confine the dogs.

¶3. Johnson's Farm Bureau Comprehensive Dwelling Package Policy provides personal liability coverage in the amount of $50,000 for each occurrence. The term occurrence is defined as "an accident, including continuous or repeated exposure to conditions." The policy also states that "regardless of the number of persons insured, injured person, claims made or suits brought, our liability is limited as follows: the limits of liability stated in the declarations for personal liability coverage is the total limit of our liability for all damages resulting from any one occurrence."

## DISCUSSION

¶4. This Court's standard of review for summary judgment is well-settled and is the same standard employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it. *Aetna Cas. & Sur. Co. v. Berry*, 669 So.2d 56, 70 (Miss.1996) (citing *Mantachie Natural Gas Dist. v. Miss. Valley Gas Co.*, 594 So.2d 1170, 1172 (Miss.1992)). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Russell v. Orr*, 700 So.2d 619, 622 (Miss.1997); *Northern Elec. Co. v. Phillips*, 660 So.2d 1278, 1281 (Miss.1995). The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss.1990). We do not try issues. Rather, we only determine whether there are issues to be tried. *Townsend v. Estate of Gilbert*, 616 So.2d 333, 335 (Miss.1993). Furthermore, it is well-settled that motions for summary judgment are to be viewed with a skeptical eye, and if a trial court should err, it is better to err on the side of denying the motion. *Aetna Cas. & Sur. Co.*, 669 So.2d at 70 (citing *Ratliff v. Ratliff*, 500 So.2d 981, 981 (Miss.1986)).

### I. WAS THE POLICY AMBIGUOUS?

¶5. The Crums and Langfords argue that the policy is ambiguous and that the number of occurrences should equal the number of effects of the negligence of Johnson.

> *1. Ambiguity in the different sections of the policy.*

¶6. The personal liability section of the policy states, "Subject to the limits of liability shown on your declaration, we will pay all sums, except punitive damages, arising out of any loss which you become legally obligated to pay as damages because of bodily injury or property damage covered by this policy." The personal liability section is further explained in the limits of liability section which states that Farm Bureau's liability is limited to damages resulting from any one occurrence. The policy's definition of "occurrence" is "an accident including continuous or repeated exposure to conditions." Immediately following the personal liability section is the medical coverage section which states:

"**Each person** who sustains bodily injury is entitled to this protection when that person is . . . (2) elsewhere if the injury

3. Is caused by an **animal** in your care."

The Crums and Langfords argue that "conditions" in the personal liability section cannot include animals because of the precise definition of bodily injuries caused by an animal in the medical coverage section.

¶7. Farm Bureau responds to this argument by asserting that the medical coverage section is an entirely different section which limits conditions to premises conditions and damages caused by animals. Farm Bureau also argues that the occurrence definition found in the personal liability section is purposefully broader to include all conditions.

¶8. On the contrary, we find that the policy is ambiguous. The broad term "conditions" in the personal liability section, read with the definition of bodily injury sustained by animals specifically defined in the medical coverage section of the policy, creates an ambiguity. It is well-established law in our state that insurance policies are to be construed strictly against the drafting party, "any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage." *Burton v. Choctaw County*, 730 So.2d 1, 8 (Miss. 1997)(citing *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994)). The personal liability section and the medical coverage section of the policy conflict; therefore, the policy is ambiguous.

    *2. Ambiguity in the use of singular nouns.*

¶9. The Crums and Langfords also contend that the policy is ambiguous because under the limit of liability section of the policy, the word "person" is singular: "3. Limits of Liability. Regardless of the number of persons insured, injured *person*, claims made or suits brought, our liability is limited as follows. . ." (emphasis added). Also, the personal liability coverage section states, "Subject to the limits of liability shown in your declaration, we will pay all sums, except punitive damages, arising out of any *loss* which you become legally obligated to pay as damages because of bodily injury or property damage covered by this policy." (emphasis added).

¶10. While the Crums and Langfords contend that the singular "injured person" makes the policy ambiguous, Farm Bureau argues that it is a mere typographical error and that the policy clearly applies the per occurrence limitation regardless of the number of persons injured or number of claims.

¶11. An ambiguity is created when a policy can logically be interpreted in more than one way, one of which would allow coverage. *Universal Underwriters Ins. Co. v. Ford*, 734 So.2d 173,176 (Miss. 1999). Because this policy can logically be interpreted in more than one way, the policy is ambiguous.

### II. WHETHER TINA'S AND TANYA'S HUSBANDS' CLAIMS OF LOSS OF CONSORTIUM CONSTITUTE A SEPARATE OCCURRENCE.

¶12. In *Choctaw, Inc., v. Wichner*, 521 So.2d 878 (Miss. 1988), the Court dealt with the issue of whether a wife's loss of consortium claim should be reduced by the contributory negligence of her husband. The Court found that the offended spouse has a separate action. *Id.* at 880.

¶13. Despite the fact that the husbands' claims are separate from Tina's and Tanya's claims, it is not logical that the loss of consortium claims could be considered a separate "occurrence" within the meaning of the insurance policy. Therefore, we find that the loss of consortium claims are not separate occurrences under the insurance policy.

### III. SHOULD THE INSURANCE POLICY BE INTERPRETED TO ALLOW THE ATTACK TO CONSTITUTE MORE THAN ONE OCCURRENCE?

¶14. The Crums and Langfords argue that each effect, or each person injured by each dog, constitutes a separate occurrence under the policy. Farm Bureau argues that the dog attack is one instance of negligence and constitutes only one occurrence.

¶15. Both Farm Bureau and the Crums and Langfords interpret *Universal Underwriters Ins. Co. v. Ford* to support their respective positions. In *Ford*, an employee embezzled money from his employer on 175 different occasions. The issue was whether the 175 different embezzlements constituted one occurrence or 175 different occurrences under the insurance policy. The policy provision defined "loss" as "loss of money which you sustain resulting directly from any fraudulent or dishonest act committed by an employee with manifest intent to (a) cause you to sustain such a loss, and; (b) obtain for benefit of the employee."*Ford* found that the policy provision was reasonably subject to more than one interpretation citing *Gunn v. Principal Cas. Ins. Co.*, 605 So.2d 741,746 (Miss. 1992). The Court then found in favor of the insured because "where there is doubt as to the meaning of an insurance contract, it is universally construed most strongly against the insurer, and in favor of the insured and a finding of coverage." *Ford*, 734 So.2d at 176. (citations omitted).

¶16. More importantly to the case at hand, the *Ford* Court looked to *Business Interiors, Inc. v. Aetna Cas. & Sur. Co.,* 751 F.2d 361 (10th Cir. 1984), which held that an occurrence is determined by the cause or causes of the resulting injury. *Ford*, 734 So.2d at 177. However, *Ford* elaborated upon that "general rule" finding that "a factual issue of whether multiple acts are sufficiently related to constitute one occurrence of loss only arises where the applicable policy language unambiguously states that multiple acts may be so treated. *Id.* at 178.

¶17. The policy does not unambiguously state that multiple injuries may not result in multiple occurrences. Therefore, we find that the policy is ambiguous and that the circuit court erred in granting Farm Bureau's motion for summary judgment.

### CONCLUSION

¶18. Although we find that Mr. Crum's and Mr. Langford's claims for loss of consortium are not separate occurrences, we also find that the policy is ambiguous. As such, we reverse the trial court's grant of summary judgment in favor of Farm Bureau, and we remand this case for further proceedings consistent with this opinion.

¶19. **REVERSED AND REMANDED.**

**PITTMAN, C.J., McRAE, P.J., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. SMITH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, JJ.**

**SMITH, PRESIDING JUSTICE, DISSENTING:**

¶20. I believe that the majority misconstrues this Court's holding in ***Universal Underwriters Ins. Co. v. Ford***, 734 So. 2d 173 (Miss. 1999). In ***Ford***, this Court clearly stated that an occurrence is determined by the cause or causes of the resulting injury. ***Id***. at 177. The majority correctly quotes the portion of the opinion following that where this Court stated that "a factual issue of whether multiple acts are sufficiently related to constitute one occurrence of loss only arises where the applicable policy language unambiguously states that multiple acts may be so treated." ***Id***. at 178. However, the majority fails to note footnoted language that appears later in the opinion. There the Court notes that

> Universal essentially argues that even if the language of the limitations clause is deemed to be ambiguous, a factual question still arises as to whether a series of related acts may be treated as one loss. The issue, however, is not whether the policy language *can* be read in favor of Universal on this point, but whether it *must* be read that way. **In the present policy there is no language which specifically rebuts Jones Ford's contention that the limitations clause unambiguously applies to each separate occasion of embezzlement. That is, there is no language stating that multiple acts or a series of related acts may be treated as one occurrence of loss. If Jones Ford's construction of the policy language is possible, then it controls.**

***Id***. at n.1 (bold emphasis added).

¶21. This language is where I believe the case at bar is distinguishable from ***Ford***. In the present case, there is language that expressly rebuts the Crums' and Langfords' contention that the limitations clause unambiguously applies to each injury. Here, occurrence is clearly defined as "an accident, including continuous or repeated exposure to conditions." Further, under "Limits of Liaibility" the insurance policy clearly states:

> Regardless of the number of persons insured, injured person, claims made or suits brought, our liability is limited as follows:
>
> (a) the limits of liability stated in the declarations for personal liability coverage is the ***total limit of our liability for all damages resulting from any one occurrence***;...

(emphasis added). While this typographical error may make this provision difficult to read, it does not make it ambiguous because it does not insinuate that each injured person from one occurrence should get the total allowed under the liability section.

¶22. It is my opinion that this language is not ambiguous. Alternatively, even if it is found to be ambiguous, there is sufficient language to rebut the contention that coverage applies to each person's injuries. Therefore, I respectfully dissent.

**WALLER AND COBB, JJ., JOIN THIS OPINION.**