# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2001-CA-01282-COA

**VIVIAN RASBERRY AND ERIC SCOTT POPE**                                                                            **APPELLANTS**

**v.**

**BLUE CROSS & BLUE SHIELD OF MISSISSIPPI**                                                                         **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 05/29/2001 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL S. ALLRED |
| | MATTHEW A. TAYLOR |
| ATTORNEYS FOR APPELLEE: | CHERI D. GREEN |
| | CYNTHIA LYNN STREET |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT IN FAVOR OF BLUE CROSS & BLUE SHIELD OF MISSISSIPPI |
| DISPOSITION: | AFFIRMED - 10/08/2002 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

EN BANC.

SOUTHWICK, P.J., FOR THE COURT:

¶1. Summary judgment was granted in favor of Blue Cross and Blue Shield on a claim of bad faith delay in payment of benefits. The plaintiffs appeal arguing that there were disputes of material fact regarding bad faith. In addition, it is argued that the issue on which summary judgment was granted was not properly before the court. We reject both arguments and affirm.

## FACTS

¶2. Eric Scott Pope was injured in a motor vehicle accident in May 1998. It appears that there is other litigation regarding the accident, alleging negligence by the operator of a truck and trailer. Pope's mother is Vivian Rasberry,[1] an employee at the time of the accident of the Neshoba County General Hospital. In the hospital's employee benefit plan, her son was a covered dependent. According to documents introduced at the time of summary judgment, the hospital was self-insured, while Blue Cross & Blue Shield of Mississippi was the claims administrator. An administrative services contract had been executed by the hospital and

Blue Cross.

¶3. The complaint in this suit against Blue Cross is that in its processing of the claims for medical care, it had been wilfully negligent, that it had failed to provide reasonable care, and that it had committed the independent tort of bad faith by denying or delaying payments in a grossly negligent or wilful manner.

¶4. Blue Cross answered by asserting its status solely as the claims administrator. It stated that it had acted according to its legal responsibilities, and that as the administrator for processing claims it was not the proper party. It did not identify the proper party, but presumably it would have been the self-insured Neshoba General Hospital.

¶5. The acts revealed in the record regarding the processing of the claims are these. Blue Cross sent a letter to Rasberry on June 15, 1998, that it had received a claim for medical services regarding these injuries. In order for Blue Cross to determine what other insurance companies might provide coverage, it explained these provisions of the plan:

> Your contract contains third party liability and work related injury exclusions. It further provides reimbursement rights should the company pay benefits for such services.
>
> Also contained in your policy is a coordination of benefits provision intended to avoid duplicate payments when a person has available to them other medical expense coverage.
>
> In order to determine proper liability, please complete the form on the reverse side and return in the enclosed envelope.

¶6. This June letter started a series of exchanges between Blue Cross and the plaintiffs' attorney. In September 1998, Blue Cross responded to plaintiffs' counsel with requested information on the health plan. In February 1999, Blue Cross responded to counsel's objections to the subrogation and third party liability provisions. Blue Cross acknowledged receiving some of the information that it needed, but said "we continue to need to know whether automobile medical payment monies were or are available to Mr. Pope."

¶7. Additional correspondence followed. Included was information that the automobile policy had covered $5,000 of the medical bills. In March 1999, Blue Cross stated that this information would allow it to process the balance of certain medical bills.

¶8. A reimbursement and subrogation agreement had been sent to the plaintiffs and their counsel. Blue Cross stated in a March 1999 letter that it was willing to redraft it in light of what it perceived to be counsel's concern, so that its lien would not apply to the one-third of any recovery from litigation that would be used for attorneys' fees and expenses.

¶9. On March 29, 1999, Blue Cross informed plaintiffs' counsel of a recent Supreme Court decision. *Hare v. Mississippi*, 733 So. 2d 277 (Miss. 1999). According to the letter, the case required that an insured be "made whole" as to his injuries and any reimbursement would only apply to the excess. Blue Cross asked for information that it thought was necessary to apply this ruling. Though there continued to be disputes, a reimbursement and subrogation agreement was signed by Blue Cross on June 8, 1999, and by Eric Pope on July 23, 1999.

¶10. Blue Cross filed for summary judgment on January 24, 2001. It asserted that as a claims administrator,

Blue Cross could not under established law be liable for the terms of the hospital's self-insured plan. On February 14, plaintiffs filed a response memorandum. It noted that the complaint asserted bad faith against Blue Cross, that bad faith would prevent the law cited by Blue Cross from applying, and that material issues of fact regarding bad faith existed. The memorandum identified the source of the bad faith as being the insistence by Blue Cross on satisfying two "illegal" provisions of the plan, namely the third party exclusion and subrogation provisions.

¶11. Blue Cross did not amend its summary judgment motion. Instead, on March 2, it filed a rebuttal memorandum that there was no dispute of material fact as to bad faith. It argued that the provisions of the plan that had caused the delay in processing the claims were legal, approved by the state insurance commissioner, and consistent with state law.

¶12. A hearing on the motion was held on May 22, 2001. Blue Cross presented its arguments. Plaintiffs' counsel argued that bad faith was not an issue in the motion, since Blue Cross had never amended the motion itself. The trial judge disagreed, and required that counsel respond to the arguments about bad faith. On May 29, 2001, the court granted summary judgment and ordered the case dismissed. Following denial of reconsideration, the plaintiffs appealed.

## DISCUSSION

¶13. Plaintiffs argue on appeal that the only issue before the trial court was whether the administrator was exempt from liability. If bad faith would make an administrator liable, plaintiffs alleged that this possibility as a factual matter could not be considered at the hearing. Unless Blue Cross amended its motion to asset that it had *not* acted in bad faith, the issue was not before the court. Secondly, the plaintiffs argued that regardless of the procedural question, there were disputes of material fact regarding bad faith that required the denial of the motion.

¶14. On review of summary judgment, the appellate court is to be vigilant that this judge-made conclusion to the litigation without a trial was proper. No deference is given to the trial judge's fact-findings, as the facts set out in affidavits, depositions, and other documents are as meaningfully examined by the appellate judges as by the trial judge. As always, legal issues are evaluated anew. When that examination is over, judgment should be affirmed if there were no disputes of material fact to be tried and the legal result of the undisputed facts was correctly reached. Conversely, if we find that the trial judge has resolved contested and material facts during this process, we should reverse and remand. *Townsend v. Estate of Gilbert*, 616 So.2d 333, 335 (Miss.1993). The party seeking judgment has the burden of showing that no genuine issue of material fact exists to try. *Crum v. Johnson*, 809 So.2d 663, 665 (Miss. 2002).

¶15. We look at the procedural question first.

### 1. Issues before the court on summary judgment

¶16. Blue Cross sought summary judgment because, as the claims administrator, it allegedly could not be liable for the operation of the plan. The plaintiffs responded that an exception existed to Blue Cross's point. The exception was that liability arises if the administrator's acts were in bad faith as a result of gross negligence, malice, or reckless disregard of the rights of the beneficiary.

¶17. Here as below, the plaintiffs allege that the bad faith issue should not have been considered since Blue Cross did not amend its summary judgment motion or file a new one to include references to bad faith;

further, it did not attach supporting evidence. Few are the pleading rules that bar a court from acting when there is notice of the issues to be addressed, and they are fully presented. Even in a trial on the merits, matters unsupported by pleadings can be tried by consent. M.R.C.P. 15(b). If consent is given by acts, it cannot later be withdrawn by words.

¶18. The first issue we face is the extent to which any response was even needed from Blue Cross. Its motion stated that it was entitled to judgment because of its relationship to the plaintiffs. The plaintiffs responded that even when that relationship existed, there would be liability if certain facts were shown to exist. No facts in the form of an affidavit or other evidence were offered to support that basis for denying judgment. Instead, a straightforward legal argument was made that two provisions in the plan being administered by Blue Cross and which the plaintiffs had been reluctant to follow were illegal. Blue Cross's reliance on them was bad faith, plaintiffs charged. No disputed facts existed from this, only a legal argument.

¶19. In sum, Blue Cross was seeking a favorable judgment based on the fact that it was the plan administrator and as such would have no liability to a beneficiary of the plan. The plaintiffs' response was an acceptance of that position with a proviso, namely, that a plan administrator was liable if it acted in bad faith. That response meant that the point of law was more fully explained, but there were no disputed facts to support the proviso, only legal argument.

¶20. The evidence before the court were the attachments made by Blue Cross to its motion, which included a dozen documents setting out its role in the matter. We have referred to some of them already, which was the plan itself, a contract between Blue Cross and the hospital, and correspondence with plaintiffs' counsel that explained the need for certain information. The evidence and the legal argument by the plaintiffs were combined. The only facts that it alleged about bad faith was that the subrogation and third party exclusion provisions that Blue Cross followed were illegal. The third party exclusion provision was said to be overbroad, and the subrogation/reimbursement provision "a clear violation of Mississippi law." Since Blue Cross "based its denial of Plaintiffs' claims on Plaintiffs' failure to sign a blatantly illegal agreement, its denial constituted a bad faith denial of payments without any arguable and legitimate reason therefor."

¶21. The law being argued by Blue Cross was that as a mere claims administrator, it had no liability to a beneficiary of the plan for delayed payment. The plaintiffs' argument was that indeed there was liability if Blue Cross acted in bad faith.

¶22. We need to determine whether any further pleadings by Blue Cross were needed. A pre-eminent authority on the almost identical federal procedural rules wrote that a "court may enter judgment on a ground not mentioned in the motion if the parties have had an adequate opportunity to argue and present evidence and summary judgment otherwise is appropriate." 10A Charles Alan Wright, et al., Federal Prac. & Proc. §2719 (1983), at 15. The cases address whether the grounds are fully explored factually despite not being specifically mentioned legally. *Wolf v. Buss (America) Inc*., 77 F.3d 914, 921 (7th Cir. 1996); *Wilder v. Prokop*, 846 F.2d 613, 626 (10th Cir. 1988). Other cases address whether a specific legal claim has been raised by the plaintiffs even though not in the complaint. *Gilley v. Protective Life Ins. Co.*, 17 F. 3d 775, 781 (5th Cir. 1994) (plaintiff did not mention an issue in complaint or any other time until responding to summary judgment; trial court had to consider that new issue in ruling on motion). Certainly, if there is not adequate notice, summary judgment on the new ground should not be granted. *John Deere Co. v. American Nat. Bank*, 809 F. 2d 1190, 1192 (5th Cir. 1987) (ground injected by court, not raised by moving party, and factually not fully presented). No amendment to the motion was necessary.

¶23. Even if there was some technical flaw in Blue Cross's motion, the issue was fully presented and was ready for resolution. It is true that at the motion hearing, plaintiffs' counsel argued that the bad faith question was not ripe. The circuit judge disagreed. It is not for a litigant to decide at a hearing, after an issue has been fully joined by the motion and response, that it should no longer be considered joined. If a party is on adequate notice of an additional issue to be considered at the motion hearing, if everything regarding that issue is before the court, then it is ripe for consideration as much as any issue specifically in the motion. The bad faith exception, based on "illegal" contract terms, was ready to be decided.

¶24. Insofar as Blue Cross's counsel stated that the issue in its motion was that the administrator was not the proper party, that is simply the legal effect if there is no bad faith. In Blue Cross's view, it was not the proper party because absent evidence of bad faith, there was nothing on which the plaintiffs could base these claims against them. We do not see that Blue Cross was saying that bad faith should not be addressed by the judge, only that since there was a total absence of evidence regarding it, independent liability for the claims administrator never arose. Thus Blue Cross remained an improper party in a suit by the beneficiary. That was indeed a legal question, as the only thing that would make Blue Cross a proper party was the legal effect of the disputed provisions.

¶25. In the frequently repeated aphorism, a court "does not try issues on a Rule 56 motion; it only determines whether there are issues to be tried." *Townsend v. Estate of Gilbert*, 616 So.2d 333, 335 (Miss.1993). When there are no disputes of relevant fact but only disputes of relevant law, there is no basis for a trial. The party seeking judgment has the burden of showing that no genuine issue of material fact exists to try. *Crum v. Johnson*, 809 So.2d 663, 665 (Miss. 2002). The facts on whether Blue Cross was a claims administrator and the provisions that allegedly were illegal were fully before the trial court. Bad faith was not to be determined from disputed facts, but instead from disputed law on the validity of the subrogation and third party exclusion provisions.

¶26. The central question for the trial judge was whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56 (c). The precision of pleadings is not what controls but whether notice of the issues has been full and fair. The plaintiffs are the ones who raised the bad faith point. They alleged that the provisions that Blue Cross was trying to enforce were illegal and that is where the bad faith arose. If these provisions were not illegal, then the "facts" alleged by the plaintiff, which were the provisions themselves, were undisputed and immaterial. If the provisions were illegal, then perhaps Blue Cross's knowledge of illegality becomes relevant and disputed. That point is never reached if the provisions themselves are legally valid.

¶27. Based on the evidence available, not on evidence that might later be presented, a trial "court's decision is reversed only if it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party."*Robinson v. Singing River Hosp. Sys.*, 732 So.2d 204, 207 (Miss.1999). The trial court should grant the motion if it "finds that the plaintiffs would be unable to prove any facts to support his claim." *Smith v. Braden*, 765 So.2d 546, 549 (Miss. 2000). Therefore, the validity of this summary judgment rises and falls on whether these were enforceable provisions. That is a question of law. We now turn to that question.

### 2. Evidence of bad faith

¶28. The initial legal point on Blue Cross's potential liability is that its status as the administrator for claims

and not the actual insurer limits its liability. The Supreme Court examined a similar issue in a suit involving the City of Tupelo. *Bass v. California Life Ins. Co.*, 581 So.2d 1087 (Miss. 1991). The City obtained a policy from California Life Insurance Co., which in turn contracted with an "administrative organization" entitled Variable Protection Administrators, Inc. The Supreme Court adopted a standard from a federal court precedent involving insurance adjusters, as the one also applicable to a claims administrator:

> The relationship between an adjuster and the insured is a purely contractual one. The adjuster does not owe the insured a fiduciary duty nor a duty to act in good faith, as the plaintiff claims.
>
> An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim. However, an adjuster is not liable for simple negligence in adjusting a claim. He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.

*Dunn v. State Farm Fire & Casualty Co.,* 711 F.Supp. 1359, 1361 (N.D. Miss.1987) (citations omitted), quoted in *Bass*, 581 So.2d at 1090. The Supreme Court concluded that *Dunn* "provides the better standard for an adjuster/administrative agent such as VPA." *Bass.*, 581 So. 2d at 1090.

¶29. Since bad faith must be shown, we look at the argument that Blue Cross's bad faith is shown by its seeking compliance with two allegedly illegal terms in the hospital's plan. A Blue Cross exhibit to summary judgment showed that both provisions had been presented to and approved by the state insurance commissioner. One stated that benefits would not be paid for an "injury growing out of an act or omission of another party for which a claim or recovery is or will be pursued. If no claim or recovery is or will be pursued, Benefits otherwise will be available under the terms of this Plan." No authority was cited in the trial court brief nor on appeal as to why that is illegal. The caselaw that the plaintiffs discussed applied to the subrogation provision. The two provisions work together, and thus we turn to the provision for which some argument is presented.

¶30. The other challenged provision required that a beneficiary sign a reimbursement or subrogation agreement. By statute, insurance companies are permitted to require "information essential for the insurer to administer coordination of benefits and subrogation provisions" of their policies. Miss. Code Ann. § 83-9-5(h) (Rev. 1999). The attorney for the plaintiffs exchanged several letters with Blue Cross regarding the coordination of benefits with other insurance providers and the need for the subrogation or reimbursement agreement to be executed. As to the timing of these letters, the accident occurred in May 1998, the first letter referenced in the exhibits is in June 1998, and additional letters were sent between the attorney and Blue Cross in September 1998, and February, March, April and June 1999. The decision on which the plaintiffs now rely was handed down in March 1999. We briefly note what that did to insurance subrogation law.

¶31. The Supreme Court held that an insurance company had no right to be reimbursed for its payments until the insured had been fully compensated for injuries. *Hare*, 733 So. 2d at 284. The case in no way rejected provisions for subrogation or found that an insurance company's insistence on the right was in some fashion bad faith. Instead it only discussed the operation of subrogation. *See* Jeffrey Jackson, Mississippi Insurance Law § 13:15 (2001) (discusses *Hare*, and points out that the federal Employee Retirement Income Security Act governs most group plans, not state law).

¶32. *Hare* was decided on March 18, 1999. On March 29, Blue Cross sent a letter to the plaintiffs'

attorney noting the opinion, and seeking the information necessary to apply the "make whole" principle. Rehearing in *Hare* was denied on May 6, 1999, and on June 8 Blue Cross had executed a reimbursement agreement that specifically referred to *Hare*. It stated that the beneficiary "will, out of the amount recovered in excess of the amount necessary to make him whole," reimburse Blue Cross for the benefits that it had paid. Pope as the injured party signed the document in July.

¶33. The only question as to bad faith is the one that arose from *Hare*. Almost immediately upon that decision being released, Blue Cross as plan administrator communicated with the plaintiffs' attorney and discussed what was needed to implement the "make whole" concept. This does not create a jury question as to bad faith. There was no procedural irregularity, no surprise, and no dispute of material fact. We affirm summary judgment that, since no bad faith was shown, Blue Cross was entitled to be released from liability.

¶34. **THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANTS.**

> **McMILLIN, C.J., BRIDGES, LEE AND BRANTLEY, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., THOMAS AND MYERS, JJ. CHANDLER, J., NOT PARTICIPATING.**

> IRVING, J., DISSENTING:

¶35. The majority holds that the grant of summary judgment was proper in this case even though the non-moving party was never given a fair opportunity to oppose it. Such a holding, in my judgment, is a throwback to the days of trial by ambush; therefore, I respectfully dissent.

¶36. Blue Cross's motion for summary judgment alleged:

> Blue Cross is the Claims Administrator for the employee benefit health plan sponsored and funded by Neshoba County General Hospital. As Claims Administrator, Blue Cross is to determine, in accordance with the plan, the qualification for payment of claims submitted and to process claims and disburse payments pursuant to the plan. Blue Cross does not have discretionary authority or control to manage the Plan. *Claims Administrators, such as Blue Cross, lacking any discretionary authority, cannot be held liable, as a matter of law under Mississippi law*.

The contract between Blue Cross and Neshoba County Hospital was attached to the motion as well as several other documents purporting to show what Blue Cross had done as plan administrator.

¶37. In reaching the result it reaches today, the majority concludes that Blue Cross's pleadings were sufficient to put Rasberry on notice that what Blue Cross was actually saying was that:

> Claims Administrators, such as Blue Cross, lacking any discretionary authority, cannot be held liable, as a matter of law under Mississippi law, *and if we are mistaken in this assumption, our second defense is that we have not acted in bad faith in the delayed payment of the claims which we admit were compensable all along*.

¶38. I should point out that the majority's interpretation of what Blue Cross intended by its pleading is more generous than Blue Cross's own interpretation. On two occasions, Blue Cross expressed what it considered to be the real thrust of its motion. The first occasion was in its response to Rasberry's Rule 56

(e) (f) motion which will be discussed later in this opinion. In its response, Blue Cross stated:

> Blue Cross is not the proper party in this suit. Blue Cross is the Claims Administrator of a Self-Funded Group Health Plan Sponsored by Neshoba. This Court can determine, as a matter of law, whether Blue Cross is the proper party to this action.

The second time that Blue Cross explained what it was asserting in its summary judgment motion was during the hearing on the motion. At the very beginning of the hearing, Blue Cross's counsel said: "Blue Cross filed this motion in January for summary judgment, and its primary argument was that they are not the proper party in this cause." At a later point during the hearing, Blue Cross's counsel said:

> The district court in Burley versus Home Owners Warranty Court [sic] held that claims administrator could [sic] perform strictly administrative functions without discretionary authority cannot be held liable under Mississippi law.

> The cases that are cited by the plaintiffs have not overruled or changed this -- the law in Burley. It only stated that an adjustor or administrator can incur independent liability if their acts constitutes [sic] gross negligence, malice or reckless disregard for right of insured.

At still a later point in the argument at the hearing, Blue Cross's counsel said:

> Judge, our motion is that basically we are not the proper party to this action. Neshoba County is the one who -- the plan belongs to them. The provisions within the plan belong to them. The provisions are legal.

> And even if we are the proper party, everything that we did was proper.

The above quotes from the transcript of the hearing on the motion for summary judgment leave no doubt as to Blue Cross's view of the intended scope of its motion for summary judgment. The majority's attempt at explaining away the effect of Blue Cross's unequivocal assertion that Blue Cross was not a proper party is indeed intriguing. The majority says that all Blue Cross was saying by its argument is that "that is the legal effect of a finding of no bad faith." I cannot imagine how such a finding can be made if one is not a proper party to the lawsuit. One must be in a lawsuit in order for one's actions to be scrutinized.

¶39. Rasberry's counsel correctly understood the limited scope of the motion. This is shown not only by the pleadings that he filed but also by his argument during the hearing on the motion for summary judgment. This is what the record reflects:

> The actual legal issue that we're here to argue today is that Blue Cross is only the claims administrator for the plan. As such, Blue Cross cannot be liable for alleged improper handling of Vivian Rasberry and Eric Scott Pope's claims for benefits.

> \* \* \* \*

> If the counsel opposite wants to raise any arguments as to the merits of our claims for bad faith, they can do so on another summary judgment motion. But the only issue that has been raised here today is whether Blue Cross is a proper party to this action as a claims administrator.

> \* \* \* \*

And based on the motion that's before the Court today, all that the defendants are saying is that there cannot be any liability. We're not here to argue the merits of the case as to whether they are liable or not liable for bad faith.

BY THE COURT: I want to hear it, so you might start arguing that.

¶40. Rasberry's counsel, having correctly understood the limited scope of the motion, made a proper response to that limited thrust. To say that one is not a proper party to an action is to say that one does not belong in the lawsuit because as a matter of law, notwithstanding what facts are proven, there is no liability against that party. To say that the undisputed facts require a judgment in one's behalf is to say that one is a proper party to the lawsuit but his actions do not give rise to liability. Even though counsel for Blue Cross did assert at the end of her argument that everything Blue Cross had done was proper, she was careful to make the assertion only after reemphasizing her view that Blue Cross was not a proper party.

¶41. It escapes me how the majority can conclude that Rasberry was on notice that Blue Cross was pleading no liability due to lack of bad faith when Blue Cross itself did not share that view of the pleadings. While I am not at all certain that the doctrine of notice pleading applies to motions for summary judgment, I am certain that the opportunity for complete and full discovery is concomitant with the advent of notice pleading. So even if the majority is correct in its view of the pleadings, I cannot agree that, given the limited view of the summary judgment motion, which was shared by both parties, it was proper for the trial court to rule on the motion when it did.

¶42. In response to the motion for summary judgment, Rasberry filed a Rule 56 (e) (f) motion wherein she asked the trial court to:

> overrule and deny, or in the alternative to stay prosecution of, defendant's Motion for summary judgment for the reason that no substantial amount of discovery has been taken in this case to date, and the said Motion is premature and not ripe for decision . . . . In the alternative, the Court's decision of said Motion should be stayed or held in abeyance pending a course of pleadings and discovery which will permit proper disposition of such a Motion.

> The specific discovery which plaintiffs need to take in order to properly meet the allegations of defendant's Motion for Summary Judgment is the comprehensive production of relevant documents, including underwriting and claims procedures manuals and related documents, and the M.R.C.P. Rule 30 (b) (6) deposition of the defendant and the individual depositions of key underwriters and claims handlers of the defendant. Furthermore, plaintiffs require a reasonable time to retain and identify an expert witness who can testify with regard to the issues pleaded in this case.

¶43. Given the limited view of the motion as shared by both parties, it is unconscionable, in my judgment, that the trial court would not withhold ruling on the motion and allow Rasberry an opportunity to take discovery as requested in her Rule 56 motion. The majority concludes that Rasberry joined the broader issue of bad faith as a result of her response to the motion, and therefore, she had ample opportunity to show the existence of genuine issues of material facts regarding Blue Cross's bad faith. Even if Rasberry, by her response, joined the issue, as the majority concludes, it is clear that this was an unwitting joinder for any purpose other than for the limited purpose of resolving the narrow issue as to whether a plan administrator may ever be held liable for its action, and, in the words of Shakespeare, "there is the rub."

¶44. Notwithstanding the various documents which Blue Cross attached to its motion, the record is clear that Blue Cross's legal stance was that it was seeking a ruling that its position as plan administrator, not its actions as plan administrator, entitled it to summary judgment. Even accepting the majority's view that the issue of Blue Cross's bad faith, via Rasberry's response, was joined for all purposes, three things remain clear: (1) everything that Blue Cross filed and said indicated a more limited view of the motion was intended, (2) Rasberry's understanding was the same as Blue Cross's, and (3) Rasberry did not consciously forego the opportunity to raise genuine material issues of fact since she understood and operated under the notion that that opportunity would come only after resolution of the question whether Blue Cross was a proper party to the lawsuit. It was Blue Cross, not Rasberry, that created this legal dichotomy. It is well-settled law that in summary judgment matters, the non-moving party should always be given the benefit of the doubt since summary judgments are not favored. *Heigle v. Heigle*, 771 So. 2d 341, 345 (¶8) (Miss. 2000). The law favors a trial on the merits after a full development of the facts and issues.

¶45. There can be no doubt that there has not been a full development of the facts in this case since no significant discovery has taken place. But even without full discovery, it appears to me that a genuine issue of material fact exists in the present state of things under the majority's expanded view of what was before the trial court.

¶46. It seems that, in light of *Hare v. Mississippi*, 733 So. 2d 277 (Miss. 1999), a genuine issue of material fact exists as to Blue Cross's bad faith in the processing of Rasberry's claim. In *Hare*, the Mississippi Supreme Court held that an insurance company has no right to be reimbursed for its payments on a policy until the insured has been fully compensated for his injuries. *Id*. at 284 (¶27). The majority attempts to downplay the significance of the legal impact of *Hare* on the question of possible bad faith on the part of Blue Cross. In the majority's view, the *Hare* decision "in no way rejected provisions for subrogation or found that an insurance company's insistence on the right was in some fashion bad faith." While *Hare* does not hold that an insurance company's insistence on the right of subrogation constitutes bad faith, it does hold that an insurance company is not entitled to reimbursement pursuant to a subrogation provision until the insured has been made whole. It seems only logical that if there is no entitlement to reimbursement until the insured has been made whole, then there is no right to withhold payment of covered expenses on the condition that recovery may eventually be obtained from the tortfeasor.

¶47. Thus, though *Hare* may not make the subject subrogation provision illegal, it is persuasive authority for the proposition that insurance companies and plan administrators cannot rely on subrogation provisions to withhold payments for covered expenses in the absence of the insured being made whole. Considering this holding in light of the fact that Blue Cross essentially provided Neshoba with the plan and withheld payments under the plan even though Rasberry had not been made whole, there is ample basis to conclude that a genuine issue of material fact existed with respect to the issue of bad faith on the part of Blue Cross.

¶48. The majority seeks to minimize the effect of *Hare* on the question of Blue Cross's bad faith by asserting that Blue Cross wrote Rasberry's counsel eleven days after the *Hare* decision "seeking the information necessary to apply the 'make whole' principle." What the majority fails to mention, however, is that Blue Cross already possessed knowledge of Rasberry's automobile policy, as well as the amount which had been paid under the policy. This fact raises the additional question whether Blue Cross, notwithstanding its admitted knowledge of the holding in *Hare*, was still attempting to delay the payments due to Rasberry.

¶49. For the reasons presented, I respectfully dissent.

**KING, P.J., THOMAS AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

1. The last name of this plaintiff was spelled as "Rasberry" in the complaint, in later pleadings filed by the plaintiff, and in Blue Cross's records introduced into evidence. It is also spelled as "Raspberry" in other documents including her appellate brief. In this opinion we use the initial spelling.