881 So.2d 889 (2004)
Robert Preston COOPER, III, Appellant,
v.
Aaron MISSEY, Appellee.
No. 2003-CA-00080-COA.
Court of Appeals of Mississippi.
March 2, 2004.
Rehearing Denied May 25, 2004.
*890 Jessica S. Upshaw, Harris Bell Williams, Pascagoula, attorneys for appellant.
James N. Compton, Biloxi, attorney for appellee.
Before McMILLIN, C.J., IRVING and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. Robert Preston Cooper, III brought a personal injury action against Aaron Missey in the Circuit Court of Jackson *891 County, Mississippi. The parties agreed to waive their right to a jury trial and to submit by briefs and oral arguments the disputed issues between the two of them. A hearing was held and the trial court entered an order denying the motion for judgment in favor of Cooper. As a result, Cooper filed a timely notice of appeal requesting our review of the following issues:
I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT MISSEY HAD NO DUTY TO RENDER AID TO COOPER UNDER MISSISSIPPI LAW AND EVEN IF A DUTY EXISTED, THAT MISSEY DID NOT BREACH IT
II. WHETHER THE TRIAL COURT ERRED IN NOT INTERPRETING THE INSURANCE POLICY TO ALLOW EACH OF THE THREE OCCASIONS ON WHICH MISSEY MOVED COOPER WITHOUT OBTAINING MEDICAL TREATMENT TO CONSTITUTE A SEPARATE OCCURRENCE UNDER THE POLICY

STATEMENT OF FACTS
¶ 2. Cooper attended a party at Missey's parent's house. Missey's parents were working overseas at the time. Many people at the party were consuming alcohol and using drugs. Missey did not know Cooper before hand but the two young men met at the party. As the party progressed, Cooper became very intoxicated and passed out on a couch in the living room. At approximately two o'clock in the morning, Cooper awoke and urinated on the living room floor. Another guest notified Missey of Cooper's behavior. Missey confronted Cooper and punched him in the face. Cooper fell to the floor. Immediately thereafter, a guest named Justin Stark proceeded to stomp on Cooper's head three times. This rendered Cooper unconscious.
¶ 3. Missey and others immediately moved Cooper out into the front yard of the house. Approximately one hour later, Missey and others moved Cooper from the front yard to the side of the house near a wooded field. Around four o'clock in the morning, Missey and others moved Cooper from the side of the house into Cooper's truck. Finally, around noon, Missey called for medical assistance.
¶ 4. Stark was charged and convicted for aggravated assault. Missey was charged with the same crime, but ultimately pled guilty to accessory after the fact. In addition, the parties entered into a settlement where Allstate, the insurance carrier for Missey's family's homeowner policy, paid Cooper $100,000, without an admission of liability. The policy provided coverage for family liability in the amount of up to $100,000 per occurrence.
¶ 5. Pursuant to the settlement agreement, Cooper brought suit to attempt to recover additional benefits under the Allstate policy if Missey was found to be negligent and if each move of Cooper was deemed a separate occurrence under the policy. The parties agreed that if Cooper proved that Missey owed a duty to obtain medical treatment and breached that duty, then the elements of causation and damage were admitted. The parties also agreed to waive their respective rights to a jury trial.
¶ 6. The trial court found that: (1) Missey had no duty to render aid to Cooper under Mississippi law; (2) even if a duty existed, Missey did not breach it; and (3) even if Missey breached a duty, the breach would constitute one "occurrence" under the policy terms so that Allstate has paid its full obligation in settlement of Cooper's claim. Aggrieved by this result, Cooper perfected the present appeal.
I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT MISSEY HAD NO DUTY TO RENDER AID TO *892 COOPER UNDER MISSISSIPPI LAW AND EVEN IF A DUTY EXISTED, THAT MISSEY DID NOT BREACH IT.
¶ 7. Cooper argues that Missey owed him a duty to obtain medical treatment which he breached on three separate occasions. In support of this argument, Cooper directs our attention to the common law, the Allstate policy itself, and the Restatement of Torts, Second. Missey argues that there is no duty for a social host to render medical aid to a licensee guest under Mississippi law. In addition, Missey argues that Cooper has failed to challenge any of the trial court's factual findings.
¶ 8. The appropriate standard of review on a question of fact requires us to affirm the decision of a trial court sitting without a jury and based upon substantial evidence unless that decision is manifestly wrong. Pride Oil Co., Inc. v. Tommy Brooks Oil Co., 761 So.2d 187, 193 (¶ 18) (Miss.2000). In order for Cooper to prevail on his claim, he must prove by a preponderance of the evidence the elements of duty, breach, causation, and damages. May v. V.F.W. Post No. 2539, 577 So.2d 372, 375 (Miss.1991). Since the parties have stipulated the two final elements, we need only address the elements of duty and breach.

A. Duty
¶ 9. The trial judge ruled that Cooper was a licensee despite the fact that he was not specifically invited. As a licensee, Missey owed Cooper a duty to refrain from willfully or wantonly injuring him. Hoffman v. Planters Gin Co., 358 So.2d 1008, 1011 (Miss.1978). The trial court found no evidence that Missey had willfully or wantonly injured Cooper. Instead, the claim before the trial court was that "Missey failed to render aid when he knew or should have known that Cooper needed medical attention."
¶ 10. Cooper asks this Court to not limit its focus of whether a duty existed solely on the concepts of invitee, licensee, and trespasser because this case does not arise from a condition on the premise. However, the Mississippi Supreme Court has consistently held that the duty owed to an entrant of property is determined by his status under the common law system. Little by Little v. Bell, 719 So.2d 757, 760 (¶ 14) (Miss.1998).
¶ 11. Cooper relies on two Mississippi cases in support of his claim that Missey owed him a duty to render aid. Dyche v. Vicksburg S. & P.R. Co., 79 Miss. 361, 30 So. 711 (Miss.1901); Chadwick v. Bush, 174 Miss. 75, 163 So. 823 (Miss.1935). In Dyche, a man was severely injured by a caboose owned by the defendant railroad. Dyche entered the caboose when it was still disconnected from the engine. Dyche got off the caboose and stepped behind it to "answer a call of nature." At this time a kicking switch was engaged and several cars rolled down the track striking the caboose. The caboose ran over Dyche and crushed his leg. The defendant railroad company transported Dyche to an employee doctor. Dyche was then transported to a hospital in Vicksburg. However, the entire trip took approximately thirteen hours despite the short distance. The trial court ruled that the defendant was not liable for Dyche's injuries but the Mississippi Supreme Court reversed. The supreme court found that while the defendant was not liable for the initial injury it ultimately became liable because the railroad company assumed charge of Dyche's treatment. In the case sub judice, Missey never undertook the treatment of Cooper. Instead, Missey moved Cooper three times for reasons other than to provide care.
¶ 12. Chadwick dealt with an automobile accident where a wide-body truck did not have lights to warn traffic of its size. *893 The Mississippi Supreme Court held that no specific statute was necessary to impose a duty to use care in driving an automobile. While we agree with the statement of law announced in Chadwick, we find Cooper's reliance on it misplaced. Chadwick in no way supports the notion that a social host has a duty to render aid to a guest.
¶ 13. We find neither of these cases to be on point with the instant case, and neither establish a duty to render aid under Mississippi law. Similarly, there is no Mississippi statute that establishes such a duty.
¶ 14. Likewise, we find no support in the policy itself that imposes a duty on the insured to obtain emergency medical treatment for someone seriously injured on the homeowner's premises. The policy in question states that Allstate "will pay reasonable expenses incurred by an insured person for first aid to other persons at the time of an accident involving bodily injury covered under this policy." This language does not create a duty. Instead, it merely provides for reimbursement.
¶ 15. Finally, Cooper directs our attention to Sections 314A, 322, and 324 of the Restatement of Torts, Second. Section 314A notes that in special relationships a duty to aid or protect arises. Cooper argues that a special relationship existed between Missey and himself for two reasons. First, because Missey was a possessor of land who held it open to members of the public who entered in response to his invitation. Second, because Missey voluntarily took custody of Cooper under circumstances such as to deprive Cooper of his normal opportunities for protection.
¶ 16. Mississippi has not adopted this section of the Restatement as authority. In addition, the special relationships required to trigger such a duty are not present in the instant case. Section 314A(3) deals with a possessor of land who holds his property out to the public for commercial purposes. Missey had a social party at his parents' house. Section 314A(4) is also inapplicable because Missey never undertook the custody of Cooper. Unlike Dyche, Missey never assumed the medical care of Cooper.
¶ 17. Section 322 refers to the duty to aid one harmed by the actor's conduct, who is then helpless and subject to further harm. Like Section 314A, this section has not been adopted in Mississippi and is also inapplicable. Stark is the one who rendered Cooper helpless. Moreover, it was not obvious that action needed to be taken to prevent future harm.
¶ 18. Section 324 states that one who, being under no duty to do so, takes charge of another who is helpless can be liable if he fails to secure the safety of that person or discontinues his aid or protection thereby leaving the other in a worse position. As noted above, Missey never undertook charge of Cooper. Missey never moved Cooper for medical reasons. This section is inapplicable as well. As a result, we hold that the trial judge was not manifestly wrong in finding no duty on Missey's part.

B. Breach
¶ 19. Assuming arguendo, that Mississippi had adopted a duty to render aid, the trial court nonetheless found that Cooper had failed to prove by a preponderance of the evidence that Missey knew or should have known that Cooper was in need of medical assistance, as is required for the imposition of such a duty. The trial court ruled in this manner because the evidence presented regarding this issue was decidedly conflicting. Two young women present at the party testified that *894 it was obvious that Cooper needed medical attention. However, one of those young women later gave conflicting testimony as to exactly when Cooper's appearance changed from the stomping.
¶ 20. Missey, Stark, and another guest testified that they did not know that Cooper needed medical attention, but instead thought he was unconscious from a combination of alcohol and drug use along with the stomping. This testimony gives credibility to the statements made by guests who testified that they believed that Cooper's unconscious state after the incident was more a need to sleep off his excesses, rather than a need for immediate medical attention. In addition, no one else at the party called for medical assistance and the appearance of swelling and bruising occurred only after the passage of time.
¶ 21. From this evidence, the trial court found that Cooper was unable to prove by a preponderance of evidence that medical treatment was needed at the time of the stomping or shortly thereafter. Assuming Cooper's injuries were obvious at the time he was placed in his truck, Allstate has already compensated Cooper for one occurrence. As a result, we hold that the trial judge was not manifestly wrong in finding no breach on Missey's part.
II. WHETHER THE TRIAL COURT ERRED IN NOT INTERPRETING THE INSURANCE POLICY TO ALLOW EACH OF THE THREE OCCASIONS ON WHICH MISSEY MOVED COOPER WITHOUT OBTAINING MEDICAL TREATMENT TO CONSTITUTE A SEPARATE OCCURRENCE UNDER THE POLICY
¶ 22. Cooper argues the trial court erred in not interpreting the policy to allow for separate occurrences. Cooper argues that the Allstate policy in question is ambiguous. As a result, Cooper argues it should be interpreted in favor of coverage. Missey argues that the policy is not ambiguous. Missey further argues that a failure to render aid, even if actionable in Mississippi, is a continuous failure.
¶ 23. The trial court found the issue of ambiguity to be moot in light of finding no duty and no breach. However, the trial judge's order states that "even if the language is ambiguous so that it could arguably allow for the finding of more than one occurrence for a single condition, the [c]ourt finds that such an interpretation is unwarranted in the instant case." The trial judge stated that since the alleged negligence is a failure to render aid that, even if actionable, this repeated failure constituted only one occurrence because it was a "continuous and repeated exposure to the same general conditions." This is exactly how occurrence is defined in the Allstate policy.
¶ 24. Cooper cites two Mississippi cases that support a finding of multiple occurrences. Crum v. Johnson, 809 So.2d 663 (Miss.2002); Universal Underwriters Ins. Co. v. Ford, 734 So.2d 173 (Miss.1999). In Crum, two women were attacked by two dogs owned by Johnson. Crum was bitten by both dogs. The other lady was only bitten by one dog. The Johnson's homeowner's policy defined occurrence the same way it is defined in the Allstate policy. The supreme court found that each woman injured by each dog constituted a separate occurrence.
¶ 25. Ford involved an employee who embezzled money from her employer on 175 different occasions. The issue was whether the 175 different embezzlements constituted one occurrence or 175 occurrences under the insurance policy. The Ford court looked to Business Interiors, Inc. v. Aetna Cas. & Sur. Co., 751 F.2d 361 (10th Cir.1984), which held that an occurrence was determined by the cause or *895 causes of the resulting injury. Ford, 734 So.2d at 177 (¶ 20). Ford elaborated on Business Interiors, Inc. by holding that "a factual issue of whether multiple acts are sufficiently related to constitute one occurrence of loss only arises where the applicable policy language unambiguously states that multiple acts may be so treated." Id. at (¶ 21). Since the policy did not unambiguously state that multiple injuries may not result in multiple occurrences, the Ford court found the policy to be ambiguous and held that each act of embezzlement constituted a separate occurrence.
¶ 26. Despite the similarities, we find Crum and Ford distinguishable from the instant case. In Crum, the two injured women argued that each person injured by each dog was a separate occurrence. In the instant case, we have only one person. In Ford, there were multiple criminal acts of embezzlement. In the instant case, the alleged negligence is a failure to render aid or a delay in seeking medical attention. Unlike Crum and Ford, there are no multiple acts in the instant case. In other words, Cooper is not arguing that Missey was negligent in physically moving him from the house to three different locations around the property. Instead, Cooper is merely arguing that Missey was negligent in not seeking immediate medical assistance or that each delay or omission constituted a separate occurrence.
¶ 27. Even if we assume that Cooper's condition was such that Missey knew or should have known that Cooper needed medical assistance, that knowledge and the resulting failure to seek medical assistance continued unbroken until the time that Missey ultimately called for an ambulance. As Missey suggests, there is no evidence that would break the chain of negligence once Cooper's condition rose to a level that demanded medical assistance. If we follow Cooper's argument, every minute could constitute a separate occurrence under the policy.
¶ 28. More importantly, the settlement agreement requires that Missey must be negligent and that each move constitute a separate occurrence in order for Cooper to recover additional proceeds under the policy. Since we hold the trial judge was not manifestly wrong in finding no negligent conduct on Missey's part, a finding of separate occurrences would not in and of itself entitle Cooper to an additional award. As a result, we agree with the trial judge's ruling that the three separate times Cooper was moved constituted only one occurrence under the Allstate policy.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.